# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01700-COA

ROGER L. CAPLINGER, GRETCHEN CAPLINGER, INNOVATIVE BUILDERS INC., GUN-HO LLC, AND PASS BUSINESS TERMINAL LLC

APPELLANTS

v.

WHITNEY BANK, A MISSISSIPPI STATE CHARTERED BANK F/K/A HANCOCK BANK, A MISSISSIPPI STATE CHARTERED BANK

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/14/2018 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | MATTHEW LOUIS PEPPER |
| ATTORNEY FOR APPELLEE: | JEFFREY R. BARBER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Pass Business Terminal LLC executed a promissory note to Whitney Bank[1] that was secured by commercial real property in Pass Christian, Mississippi.    Whitney Bank subsequently filed suit in the Harrison County Circuit Court against the Guarantors[2] after the

---

[1] The record reflects that the business's name changed to "Hancock Whitney Bank," effective May 25, 2018.

[2] We refer to Roger Caplinger, Gretchen Caplinger, Innovative Builders Inc., and Gun-Ho LLC as the "Guarantors" in this opinion.

Appellants[3] failed to repay that loan. In response to the suit, the Guarantors filed a counterclaim against Whitney Bank, contending that Whitney Bank (1) breached the implied covenant of good faith and fair dealing and (2) was negligent in connection to an appraisal of the collateral by Integra Realty Resources - Jackson LLC (Integra), which Whitney Bank had requested.

¶2. Whitney Bank filed a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, stating no genuine issues of material fact existed in the Guarantors' counterclaim. The Guarantors then moved to amend their counterclaim to add Pass Business Terminal as a counter-plaintiff and Integra as a counter-defendant. In the interim, Pass Business Terminal paid off the indebtedness secured by the real property. After a hearing on the motions, the circuit court entered an order dismissing Whitney Bank's complaint against the Guarantors because the note had been satisfied in full, denying the Guarantors' motion to amend, granting Whitney Bank's motion for summary judgment, and dismissing the Guarantors' counterclaim.

¶3. It is from that order the Appellants appeal to this Court. The Appellants cite four errors pertaining to Whitney Bank's summary-judgment motion. Finding no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶4. On November 6, 2014, Pass Business Terminal, the debtor, executed a consolidated promissory note in favor of its lender, Whitney Bank, in the amount of $473,162.64. On the

---

[3] The "Appellants" is a reference to Pass Business Terminal LLC and the Guarantors.

2

same day, the Guarantors also executed continuing-guaranty agreements. The loan was secured by commercial real property located in Pass Christian, Mississippi.[4]

¶5.    One year later, on November 6, 2015, Pass Business Terminal's note matured under its terms.  The Appellants failed to repay Whitney Bank.  On December 29, 2015, Whitney Bank and the Appellants entered into a forbearance agreement that extended the loan's termination date by six months, to May 6, 2016.  In addition to extending the loan's termination date, the forbearance agreement postponed foreclosure of the collateral, included a clause that stated Whitney Bank had no further obligation to forbear, and included language that gave Whitney Bank the sole discretion to extend the forbearance period beyond the May 6, 2016 termination date.

¶6.    Following the expiration of the forbearance agreement, the Appellants failed to repay Whitney Bank.  Subsequently, Whitney Bank initiated a foreclosure sale scheduled for October 14, 2016.  However, Pass Business Terminal filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Mississippi on October 11, 2016, staying the foreclosure.[5]

¶7.    During the bankruptcy case, Whitney Bank demanded the Guarantors remit their obligations under their continuing-guaranty agreements and the forbearance agreement.  The

---

[4] The commercial real property consisted of roughly 5.1 acres and a 44,796 square-foot (gross) building area.  The property was used for the owner's business use and leasing of space to third parties.

[5] The matter was docketed as case number 16-51767-KMS.

Guarantors refused, which Whitney Bank alleges breached their guarantee agreements and forbearance agreement.

¶8.     In the bankruptcy proceedings, Whitney Bank and Pass Business Terminal reached an agreement on February 7, 2017, that was reflected in an agreed order entered by the bankruptcy court, granting (1) "Conditional Abandonment and Conditional Relief From Automatic Stay"; (2) "Determination of Single Asset Real Estate Status"; (3) "Forms of Adequate Protection"; and (4) "Conditional Use of Cash Collateral."[6] That order provided in part:

> I.     Nothing in this Order shall be construed as consent by the Bank of the terms of any plan or any amendment or modification to the Motion or the Motion to Prohibit or this Order. The Bank's consent to the relief herein will not constitute a waiver of any of its rights, claims and defenses against the Debtor or the Guarantors under the Loan Documents and applicable law (state and federal).
>
> . . . .
>
> M.     The stipulations, terms and conditions of this Order shall be binding upon the Debtor and the Bank.
>
> N.     The Debtor hereby waives and releases any and all claims or causes of action it may have or claim to have against the Bank and those acting on its behalf (including, but not limited to, its officers, directors, shareholders, employees, agents, accountants, and attorneys) through and including the date of this Order to the full extent provided for in Section VII.D of the Forbearance Agreement. The Debtor waives the right to injunctive relief (including under Section 105 of the Code) that is inconsistent with the terms and conditions of this Order. . . .

---

[6] The circuit court took judicial notice of the "Agreed Bankruptcy Order" under Mississippi Rule of Evidence 201.

¶9.     On April 4, 2017, before Pass Business Terminal subsequently satisfied its loan, Whitney Bank filed suit against the Guarantors in Harrison County, Mississippi.[7] Seven days after the suit was filed, Pass Business Terminal, which was not a party to the suit, filed a suggestion-of-bankruptcy exhibit, which was the bankruptcy court's agreed order. On May 9, 2017, the Guarantors filed an "Answer and Counterclaim." The counterclaim alleged that Whitney Bank (1) breached the implied covenant of good faith and fair dealing and (2) was "wilful[ly] and intentionally negligent in its valuation practice" because Whitney Bank "deliberately undervalued the property so that it could obtain the property using unfair lending practices and[/]or fraud or artifice." On June 15, 2017, Whitney Bank filed its "Second Amended Reply and Affirmative Defenses to Counterclaim of Defendants."

¶10.    On October 27, 2017, the bankruptcy case was dismissed without a confirmed Chapter 11 plan. Whitney Bank reinitiated foreclosure on the commercial real property, but before the completion of that foreclosure sale, Pass Business Terminal satisfied its loan in full to Whitney Bank on March 29, 2018.

¶11.    Over the next year, the parties failed to engage in discovery. Whitney Bank filed a motion for summary judgment, asserting that no genuine issues of material fact existed and

---

[7] "Although the scope of the automatic stay is broad, the clear language of 11 U.S.C. § 362(a) [(2012)] stays actions only against a debtor." *Fleisher v. S. AgCredit FLCA*, 108 So. 3d 948, 955 (¶28) (Miss. Ct. App. 2012) (internal quotation marks omitted) (quoting *McCartney v. Integra Nat'l Bank*, 106 F.3d 506, 509 (3d Cir. 1997)). "As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *Id.* (internal quotation mark omitted).

that Whitney Bank was entitled to judgment as a matter of law on both claims in the Guarantors' counterclaim. Whitney Bank also accompanied the summary-judgment motion with an "Itemization of Undisputed Facts." The Guarantors responded to the dispositive motion and attached two affidavits. Whitney Bank moved to strike both affidavits of the Guarantors, and the circuit court granted the motion.[8]

¶12. On May 29, 2018, twenty-five days after Whitney Bank filed its summary-judgment motion on the Guarantors' counterclaim, the Appellants filed a "Motion to Amend Answer and Counterclaim with Intervention In Accordance With MRCP 15(a)." The proposed amended counterclaim did not assert any new causes of action. In essence, the motion solely sought to add Pass Business Terminal as a counter-plaintiff and Integra as a counter-defendant.

¶13. On October 4, 2018, the circuit court held a hearing to discuss Whitney Bank's summary-judgment motion, the Guarantors' motion to amend counterclaim, and Whitney Bank's motions to strike the affidavits of Roger Caplinger and Toni Strickland. Separate from that hearing, the circuit court dismissed Whitney Bank's complaint, on motion of the Guarantors since the loan had been paid in full. A month after the hearing, the circuit court entered a thirty-four page "Findings of Fact and Conclusion of Law" denying the Guarantors' motion to amend, granting Whitney Bank's motions to strike, granting Whitney Bank's

---

[8] On appeal, the Appellants do not dispute the circuit court's ruling to strike both affidavits.

motion for summary judgment, and dismissing the Guarantors' counterclaim.

¶14. The Appellants filed a notice of appeal on December 7, 2018. On appeal, the Appellants assert that the circuit court erred (I) by granting summary judgment despite the breach of the implied covenant of good faith and fair dealing; (II) by granting summary judgment based on waiver and release; (III) by denying Pass Business Terminal's request to intervene and to join Integra as a counter-defendant; and (IV) by granting summary judgment prior to discovery.

## STANDARD OF REVIEW

¶15. Rule 56(c) of the Mississippi Rules of Civil Procedure provides that a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). We review a trial court's grant of summary judgment de novo. *Copiah County v. Oliver*, 51 So. 3d 205, 207 (¶7) (Miss. 2011) (citing *Monsanto v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005)). The evidence is viewed in the light most favorable to the non-moving party. *Massey v. Triangle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004). However, "[t]he non-moving party may not rest upon allegations or denials in the pleadings but must set forth specific facts that are genuine issues for trial." *Id.*

## DISCUSSION

### I.     Implied Covenant of Good Faith and Fair Dealing

7

¶16. The Appellants assert Whitney Bank hired Integra to fraudulently appraise the commercial-real-property collateral in Pass Christian, as a breach of the implied covenant of good faith and fair dealing. In opposition, Whitney Bank contends the appraisal was immaterial to the instant case's disposition by summary judgment. According to Whitney Bank, "[t]he Bank's decision to decline a second forbearance period and to proceed with collection could have been based on a good appraisal, a bad appraisal, no appraisal at all, or simply because the Bank did not want to wait any longer for payment, as was its right under the contract documents."

¶17. In the circuit court's order granting summary judgment, the court agreed with Whitney Bank and found that it did not breach the implied covenant of good faith and fair dealing because Whitney Bank and the Guarantors "contractually altered the standard of conduct in [their] Forbearance Agreement." In addition, the court held that even if the parties did not alter the contract, Whitney Bank was "expressly authorized" to deny further forbearance, which did not breach the implied covenant of good faith and fair dealing. We agree.

¶18. All contracts contain "an implied covenant of good faith and fair dealing in performance and enforcement." *Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 170 (¶24) (Miss. 2004); *Jones v. Miss. Insts. of Higher Learning*, 264 So. 3d 9, 18 (¶27) (Miss. Ct. App. 2018), *cert. denied*, 263 So. 3d 666 (Miss. 2019). Good faith has been defined by courts as "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Cenac v. Murry*, 609 So. 2d 1257,

8

1272 (Miss. 1992). Bad faith has been defined as requiring "a showing of more than bad judgment or negligence; . . . bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Williams*, 891 So. 2d at 170-71 (¶24) (internal quotations marks omitted) (quoting *Bailey v. Bailey*, 724 So. 2d 335, 338 (¶9) (Miss. 1998)). However, "a party does not breach the implied covenant of good faith and fair dealing when the party took only those actions which were duly authorized by the contract." *Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC*, 119 So. 3d 338, 345 (¶20) (Miss. Ct. App. 2012) (internal quotation marks omitted) (quoting *Limbert v. Miss. Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 998 (¶14) (Miss. 2008)).

¶19.    The Appellants do not claim in their appellate brief that any clause or term in the forbearance agreement was ambiguous. *See Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 752 (¶10) (Miss. 2003) (stating that the first step in reviewing contract interpretation is to determine whether the contract is ambiguous). Nevertheless, the plain language of the forbearance agreement is clear. Section III, subsection A stated, "Obligors agree, declare and acknowledge that: (i) the Loan has matured." Subsection D provided, "Lender has informed each of them that *Lender does not intend to further extend the Forbearance Period* and expects payment in full of the Loan on or before the Termination Date." (Emphasis added). Furthermore, Section VII, subsection C declared Whitney Bank as the sole determiner of "[a]ny extension of the Forbearance Period."

¶20.    Whitney Bank's action to appraise the real property did not breach the implied

9

covenant of good faith and fair dealing because Whitney Bank exercised its contractual right to pursue foreclosure and collection of the indebtedness. The issue of whether a party can act in bad faith by exercising a contractual right to terminate an agreement was addressed in *Limbert*, 998 So. 2d at 998-99 (¶¶10-14). There, the appellant exercised her express right to terminate an agreement by giving sixty days' notice to the other party. *Id.* at 998 (¶12). As in the instant case, our supreme court noted that the appellee had not attacked the validity of the agreement. *Id.* at 999 (¶13). Further, the court ruled, "This Court has held that a party has not breached the implied covenant of good faith and fair dealing when the party 'took only those actions which were duly authorized by the contract.'" *Id.* at (¶14) (quoting *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (¶29) (Miss. 1999)). The appellant "could not have acted in bad faith" when she exercised her contractual right to terminate the agreement. *Id.*

¶21. Here, the Appellants assert that Integra's appraisal was fraudulent because the valuation was "27% of its true appraised value." The Appellants further allege that such "fraud" created a genuine issue of material fact that precluded summary judgment. But the record shows that the subject appraisal was performed *after* the forbearance period expired and that the loan remained unpaid. Because the appraisal was performed after the forbearance period and because Whitney Bank was not restrained from its right under the note, deeds of trust, and guaranty agreements, we fail to see a material link between Integra's appraisal and Whitney Bank's implied duty to act fairly and in good faith.

10

¶22. Additionally, the record, the court's order, and the parties' briefs show that the Appellants breached the original promissory note and latter forbearance agreement by not meeting the terms of their agreements. After the first breach, Whitney Bank chose to forbear enforcement of the payment period for six additional months, which is reflected by the forbearance agreement. The record also shows that during this period of forbearance, Pass Business Terminal continued to utilize the commercial real property as it saw fit. After the six-month period expired, the Appellants again failed to repay Whitney Bank. Therefore, the Appellants again were in breach for failing to repay Whitney Bank. Once the note matured and the forbearance period expired, the terms of that forbearance agreement were explicit: Whitney Bank was under no contractual obligation to further forbear the Appellants' payment period.[9] In conclusion, we find the subsequent appraisal conducted by Integra bore no weight on Whitney Bank's implied duty of good faith and fairness. As such, the circuit court properly held that Whitney Bank did not breach its implied covenant of good faith and fair dealing, as Whitney Bank was "duly authorized" to decline further forbearance.[10]

---

[9] We note that, at this point, Whitney Bank was permitted to proceed with a collection suit on the loan or foreclose on the commercial real property. *See Competition Marine of MS Inc. v. Whitney Bank*, 220 So. 3d 1019, 1023 (¶13) (Miss. Ct. App. 2017) (holding that a lender was not required to pursue foreclosure proceedings on real-estate collateral used to secure the loan prior to initiating a collection action against debtor and guarantor).

[10] The Appellants also assert that Whitney Bank was mandated by two FDIC regulations to (1) conduct an appraisal (2) by an independent appraiser. According to the Appellants, Integra was not an independent appraiser because an attorney at the firm representing Whitney Bank was an officer of the company. However, we decline to address this issue because the subject appraisal conducted by Integra did not create a genuine issue of material fact and it does not concern the right of Whitney Bank to pursue collection

## II. Waiver and Release

¶23. The circuit court, in deciding whether to grant the Guarantors' motion to amend counterclaim and to add Pass Business Terminal and Integra, relied on an agreement made between Pass Business Terminal and Whitney Bank. The bankruptcy court adopted this agreement in an "Agreed Bankruptcy Order." The circuit court found that the motion to amend was made in bad faith and futility. In coming to its conclusion, the circuit court found that Pass Business Terminal had released its claims against Whitney Bank and Integra pursuant to the parties' agreement. In their second assignment of error, the Appellants assert the circuit court erred by denying the Appellants' motion to amend based on waiver and release.

¶24. In particular, the Appellants argue that a question of fact exists as to whether Whitney Bank knew at the time of the forbearance agreement that Integra's appraisal would be fraudulent. The Appellants' brief states, "Accordingly, by no stretch of the imagination could Appellants hereto be claimed to have waived a claim they knew nothing about at the time the [forbearance agreement] . . . w[as] signed." The Appellants further argue in their brief that Integra's appraisal occurred after the forbearance agreement, so Pass Business Terminal could not have waived its claims against Whitney Bank.

¶25. Whitney Bank contends in opposition that the circuit court did not make its finding based on the forbearance agreement's waiver-and-release clause; rather, since the

against the Guarantors.

12

Appellants' claims arose from alleged facts that occurred after the forbearance agreement expired, the circuit court's ruling on waiver and release "focused on the Agreed Bankruptcy Order, which was entered after the events alleged in [the Appellants'] counterclaim."

¶26.    The record reflects that the circuit court relied on the Agreed Bankruptcy Order to find that this motion to amend was, among other things, made in bad faith and was futile. Because Pass Business Terminal agreed, as evidenced in the bankruptcy court order, to further waive and release its claims against Whitney Bank after Integra's appraisal was conducted, the circuit court found that Pass Business Terminal had released its claims against Whitney Bank and Integra, which was acting on behalf of Whitney Bank.

¶27.    For purposes of clarity, we briefly reiterate the relevant facts. Pass Business Terminal and Whitney Bank entered into a forbearance agreement that waived and released Pass Business Terminal's claims against Whitney Bank.  After that, Integra appraised the commercial real property in Pass Christian in July 2016.  The Appellants' claims center around that appraisal.  Seven months later, on February 7, 2017, Pass Business Terminal further agreed to release and waive its claims against Whitney Bank and Integra, which was documented by the bankruptcy court's order stating that Pass Business Terminal "wavie[d] and release[d] any and all claims or causes of action it may have or claim to have against the Bank and those acting on its behalf."

¶28.    What is more, we find that the circuit court's order relied on the parties' agreement and the Agreed Bankruptcy Order, and not the antecedent forbearance agreement.  For

13

example, in paragraph fourteen of the circuit court's order, the court made the following finding, "While the Agreed Bankruptcy Court Order expressly preserved the Bank's claims against the Defendants, it did not disclose or preserve any causes of action [that] Pass Business Terminal might have against the Bank or third parties." Furthermore, in determining that the Guarantors' motion to amend was made in bad faith, paragraph forty-nine states that "the proposed Amended Counterclaim seeks to include Pass Business Terminal[,] but as discussed earlier herein, Pass Business Terminal had already granted the Bank (and those acting on its behalf, which includes Integra) a full release in the Agreed Bankruptcy Court Order." Paragraph fifty-one stated:

> The proposed Amended Counterclaim will be futile and leave to file it should not be granted. The proposed Amended Counterclaim is futile because: (i) Pass Business Terminal is judicially estopped from asserting a claim against the Bank and Integra since it failed to schedule any potential cause of action in its sworn bankruptcy schedules; (ii) the omission of any potential cause of action in Pass Business Terminal's bankruptcy schedules is an evidentiary admission; (iii) *Pass Business Terminal released the Bank in the Agreed Bankruptcy Court Order*; (iv) the parties contractually altered the standard of conduct and, thus, the Defendants and Pass Business Terminal are asserting claims using an incorrect standard in the Forbearance Agreement; and (v) the Motion to Amend fails to properly demonstrate the need for intervention by Pass Business Terminal and for Integra to be added as a party.

(Emphasis added). Finally, in paragraph fifty-eight, the court found that "Pass Business Terminal granted the Bank . . . a full release pursuant to the Agreed Bankruptcy Order." The court continued: "It is futile to permit an amendment to assert a claim by an entity that has previously entered into a court-approved release." Upon review, we find that the circuit court did not err by denying the Appellants' motion to amend based on waiver and release

14

because the subsequent agreement, which was reflected in the Agreed Bankruptcy Order, released Pass Business Terminal's claims against Whitney Bank. This issue is without merit.

### III. Necessary Parties

¶29. The Appellants also assert the circuit court committed reversible error when it failed to allow Pass Business Terminal and Integra to join the litigation as "necessary" parties. According to the Appellants, "[t]he Mississippi Supreme [C]ourt has consistently held that it is reversible error to render a decision when certain necessary parties (those persons having ownership interests) were not before the court."

¶30. In support of their argument, the Appellants improperly employ blanket citations to *Brantley* and *Curtis*, *infra*, without providing analysis or reasoning to this Court. *See* M.R.A.P. 28(a)(7) ("The argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on."). Regardless, we will review each case.

¶31. In *Brantley*, the original defendants signed a settlement agreement with the original petitioner believing all interested parties were involved in the case, which, by their agreement, extinguished all possible claims. *In re Conservatorship of Brantley*, 865 So. 2d 1126, 1131 (¶19) (Miss. 2004). After the chancellor approved the settlement, a subsequent complaint was filed against the original parties to set aside that settlement, alleging that necessary parties had been left out. *Id.* Our supreme court dismissed the latter complainants' claim, finding that the claim relied on law that the State of Mississippi did not recognize. *Id.*

15

at (¶18). However, in the interest of fairness and equity, the court reversed the chancery court's settlement approval because interested parties (i.e., the latter complainants) "were left out of the settlement, and their rights were not represented." *Id.* at (¶19).

¶32. In *Curtis*, the City of Ocean Springs held a tax sale, and a person named Curtis bought property that was the subject of the case at that tax sale. *Curtis v. Carter*, 906 So. 2d 758, 758 (¶2) (Miss. 2005). After the sale, the appellees filed suit and a motion for summary judgment to set aside the tax sale because of insufficient statutory notice. *Id.* at 759 (¶3). The chancery court granted summary judgment and set aside the entire tax sale. *Id.* This Court affirmed. *Id.* On writ of certiorari, our supreme court held that the chancery court erred by setting aside the entire tax sale "because certain necessary parties were not before the court." *Id.* at (¶7). In its decision, the court explained that under Mississippi Code Annotated section 27-43-3 (Rev. 2002), there was a statutory requirement to provide notice to anyone with ownership interests. *Id.* at (¶6). Since seven individuals who held ownership interests in the subject property were not made parties to the proceeding, the court reversed summary judgment and set aside that specific part of the tax sale. *Id.*

¶33. Here, Pass Business Terminal sought to intervene in the instant case by inserting itself into the Guarantors' motion to amend their answer and counterclaim. Unlike the necessary parties in *Brantley*, the record shows that Pass Business Terminal had knowledge of Whitney Bank's original action for over a year before attempting to join. The record also shows that no effort was made on Pass Business Terminal's part until after Whitney Bank filed its

16

motion for summary judgment. Further, unlike *Curtis*, Pass Business Terminal was not an omitted party with an interest derived by statute.

¶34. That said, it is well-known that our rules of civil procedure provide avenues of relief to parties who seek to join an action. *See, e.g.*, M.R.C.P. 19, 21, 24. But the Appellants fail to cite any pertinent procedural rule or provide any argument relating thereto in their brief. We note that our supreme court has found that an exception exists that allows an appellate court to consider a Rule 19 issue sua sponte when the interests of an absent person are prejudiced by virtue of not being made a party to the original action. *See Shaw v. Shaw*, 603 So. 2d 287, 294 (Miss. 1992). However, we need not go that far here because Pass Business Terminal waived and released its claims against Whitney Bank and Integra per an agreement reflected in court-ordered release.

¶35. As to Integra, the Appellants fail to show to this Court why Integra is a "necessary" party to the case. The Appellants' brief is without *any* argument pertaining to the need to add Integra as a party this case. Therefore, this issue is waived.

### IV. Discovery

¶36. In their final assignment of error, the Appellants argue it was reversible error for the circuit court to grant summary judgment prematurely and prior to discovery being conducted. The Appellants further argue that Pass Business Terminal was unable to conduct discovery because the circuit court had not ruled on its motion to intervene. Whitney Bank contends that Rule 56 "does not require the completion of discovery as a prerequisite for summary

17

judgement." In addition, Whitney Bank argues that the Guarantors had over a year to engage in discovery but failed to do so by choice.

¶37.    Under Rule 56 of the Mississippi Rules of Civil Procedure, "[a] party against whom a claim, counter-claim, or cross-claim is asserted . . . may, *at any time*, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." M.R.C.P. 56(b) (emphasis added). Further, courts have held that summary judgment should not "*ordinarily*" be granted before discovery was completed, while acknowledging that such might be available in the proper case. *Holifield v. Pitts Swabbing Co.*, 533 So. 2d 1112, 1117 (Miss. 1988).

¶38.    The Appellants cite to *Sullivan v. Tullos*, 19 So. 3d 1271 (Miss. 2009), to support their contentions. In that case, the defendants moved to dismiss the plaintiffs' complaint, which the trial court converted into a motion for summary judgment after exhibits were admitted into evidence during a hearing on that motion. *Id.* at 1275-76 (¶¶16-19). On appeal, although the conversion was found proper, our supreme court reversed the trial court's finding on summary judgment because the plaintiffs were not allowed an opportunity to further conduct discovery and because the defendant's had not filed an answer in response to the plaintiffs' complaint. *Id.* at 1277 (¶25).

¶39.    Whitney Bank filed its complaint on April 4, 2017. Unlike the defendants in *Sullivan*, the Guarantors answered Whitney Bank's complaint and filed an accompanying counterclaim on May 9, 2017. At no time during the litigation did the Guarantors file a motion to continue

18

or request discovery.

¶40.    In *Holifield*, our supreme court addressed a similar issue that we find applicable to this case.  There, the plaintiff filed a complaint in July.  *Holifield*, 533 So. 2d at 1116.  Ten months later, the defendant moved for summary judgment.  *Id.* at 1117.  Judgment was rendered in the defendant's favor one month later.  *Id.*  According to our supreme court, the only discovery filed or initiated by the plaintiff at the time of judgment were depositions taken one month prior to the defendant's summary-judgment motion.  *Id.*  In affirming the trial court, the court held that the plaintiff-appellant had ample time and opportunity to file discovery requests and depose his own experts.  *Id.* at 1118.

¶41.    We, too, hold that the Guarantors had ample time and opportunity to conduct discovery.  In fact, the Guarantors had more time than the plaintiffs in *Holifield* to conduct discovery.  While arguing that the circuit court had not ruled on Pass Business Terminal's motion to intervene, the Guarantors failed to conduct any discovery during the entire eighteen-month period.  Accordingly, we hold that the circuit court did not err by granting summary judgment.

¶42.    **AFFIRMED.**

   **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**